**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| **BRIAN DAVID STREBE,** | ) | |
| **Plaintiff,** | ) | **Civil Action No. 7:17cv00321** |
| | ) | |
| **v.** | ) | **OPINION & ORDER** |
| | ) | |
| **BARRY KANODE, *et al.*,** | ) | **By: Norman K. Moon** |
| **Defendants.** | ) | **United States District Judge** |

On September 18, 2018, I denied Strebe's motion for preliminary injunction and granted summary judgment for the defendants. *Strebe v. Kanode*, No. 7:17cv00321, 2018 WL 4473117 (W.D. Va. Sept. 18, 2018). Strebe, a Virginia inmate proceeding *pro se* filed two motions to alter, amend, or reconsider (Dkt. Nos. 33, 40) pursuant to Rule 59 and/or Rule 60 of the Federal Rules of Civil Procedure. For the reasons that follow, the motions are **DENIED**.

**I.**

I will first assess the motion for reconsideration of the denial of Strebe's motion to amend, Dkt. No. 33.

Motions for reconsideration of an interlocutory order are governed by Federal Rule of Civil Procedure 54(b), under which "any order . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). "Thus, when warranted, a district court retains the power to reconsider and modify its interlocutory judgments at any time before the final judgment." *Lynn v. Monarch Recovery Mgmt., Inc.*, 953 F. Supp. 2d 612, 618 (D. Md. 2013) (citing *Am. Canoe Ass'n v. Murphy Farm, Inc.*, 326 F.3d 505, 514-15 (4th Cir. 2003)).

Resolution of the motion is "committed to the discretion of the district court," *Am. Canoe Ass'n*, 326 F.3d at 515, and "the goal is to reach the correct judgment under law." *Netscape Commc'n Corp. v. ValueClick, Inc.*, 704 F. Supp. 2d 544, 547 (E.D. Va. 2010) (internal citation omitted). The court may consider reasoning from Rules 59(e) and 60(b) in deciding whether to grant relief under Rule 54(b). *See Fayettesville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1470 (4th Cir. 1991); *Lynn*, 953 F. Supp. 2d at 619 n.22 (collecting cases applying the analyses of Rules 59(e) and 60(b) to Rule 54(b) reconsiderations). Therefore, a court may consider such factors as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

In Strebe's proposed amendment, he sought to add two retaliation claims against RNCC employees. In the proposed third claim, he alleges Investigator Horton retaliated against Strebe for filing the present lawsuit by threatening Strebe. In the proposed fourth claim, Strebe argues that his due process rights were violated when Chief of Housing and Programs A. Kilbourne, Assistant Warden P. White, and Senior Counselor Walz fired Strebe from his job as an inmate law library clerk without a hearing. The court denied the motions. In his motion for reconsideration, Strebe argues (1) the motion is timely because he submitted the motion to amend immediately following the actions of the proposed new defendants; and (2) the claims relate to the underlying lawsuit. Timeliness is immaterial because the proposed third claim is unexhausted and the proposed fourth claim is unrelated to the underlying lawsuit.

As to the third claim, Strebe alleges Investigator Horton retaliated in response to Strebe's lawsuit against Warden Kanode and Director Clarke. Specifically, Investigator Horton told

Strebe to drop his lawsuit against Warden Kanode and Director Clarke. When Strebe informed Investigator Horton that he would not comply, Investigator Horton stated that he would make sure that Strebe would be: fired from his job as a law library clerk, banned from the law library, charged with a false infraction, transferred to another institution, and housed with an offender who would rape Strebe. Another investigator later approached Strebe, reminded Strebe of Investigator Horton's threats, and had Strebe write a statement admitting that Strebe had made false allegations against a staff member. On November 27, 2017, Strebe was suspended from his institutional employment due to an "open investigation," but he was not charged with a disciplinary infraction. After Strebe filed his first motion to amend, an outside investigator arrived to speak with Strebe about his allegations, but, according to Strebe, the investigator was only interested in the threat of sexual assault. Strebe asserts that he heard Investigator Horton laughing through the wall during the interview. The laughing upset Strebe, so he ended the interview and returned to his cell.

Under the Prisoner Litigation Reform Act ("PLRA"), a prisoner must fully exhaust available administrative remedies before bringing a § 1983 action. *Porter v. Nussie*, 534 U.S. 516, 524 (2002). An inmate plaintiff is not required to make an affirmative showing that he has exhausted his claims pursuant to the prison's grievance procedure. *Jones v. Bock*, 549 U.S. 199, 215 (2007). Nonetheless, "[e]xhaustion has not occurred and dismissal is warranted when an institution's appeal process necessarily must continue after the filing of the complaint." *Germain v. Shearin*, 653 F. App'x 231, 234 (4th Cir. 2016) (citing *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002) (noting the First, Second, Third, Seventh, Eleventh, and D.C. Circuits follow this rule)); *see Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) ("The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in

federal Court. . . . The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit."); *see also Ross v. Blake*, 578 U.S. ___, 136 S. Ct. 1850, 1859 (2016) ("When an administrative process is susceptible of multiple reasonable interpretations, Congress has determined that the inmate should err on the side of exhaustion."). Here, Strebe fully admits that his claims are unexhausted and that he is actively attempting to litigate this claim and proceed through the grievance procedure simultaneously. Am. Compl. 2, Dkt. No. 28-1; Grievance Reports, Dkt. No. 28-3. Therefore, the claim is premature under the PLRA and I will deny the motion to reconsider the motion to amend as to his proposed third claim.

Furthermore, the proposed fourth claim is unrelated to the underlying complaint and ultimately futile because there is no constitutional due process protection for an institutional occupation. *See* Fed. R. Civ. P. 20(a)(2) (discussing permissive joinder of a defendant). The Due Process Clause applies when government action deprives an individual of a legitimate liberty or property interest. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972). The first step in analyzing a procedural due process claim is to identify whether the alleged conduct affects a protected interest. *See Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997). Here, "[t]he law is clear that [an inmate does] not enjoy a protected property or liberty interest in retaining his prison job." *Hinton v. Diggs*, No. 3:09cv469, 2011 WL 2964413, at *2 (E.D. Va. July 20, 2011); *see also Bulger v. United States Bureau of Prisons*, 65 F.3d 48, 49 (5th Cir. 1995) (holding that "prisoners have no constitutionally protected liberty or property interests *per se* in their prison job assignments"); *Backus v. Ward*, 151 F.3d 1028, 1028 (4th Cir. 1998) (per curiam) (unpublished) (citing *Bulger* and asserting same). Therefore, I will deny the motion to reconsider the motion to amend as to his proposed fourth claim as futile and unrelated to the underlying complaint.

## II.

Second, I will discuss the denial of the motion for preliminary injunction and the dismissal of Strebe's case. *See* Dkt. Nos. 33, 39, 40. A court may amend or alter a judgment under Rule 59(e) "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Hutchison v. Staton*, 994 F.2d 1076, 1081 (4th Cir. 1993). "Importantly, however, a Rule 59(e) motion for reconsideration may not be used to 'reargue the facts and law originally argued in the parties' briefs.'" *Projects Mgmt. Co. v. DynCorp Int'l, L.L.C.*, 17 F. Supp. 3d 539, 541 (E.D. Va. 2014) (quoting *United States v. Smithfield Foods*, 969 F. Supp. 975, 977 (E.D. Va. 1997)). This standard is narrowly construed, as a Rule 59(e) motion is "'an extraordinary remedy which should be used sparingly.'" *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1993) (quoting 11 Wright et al., Federal Practice and Procedure § 2810.1, at 124 (2d ed. 1995)); *see Durkin v. Taylor*, 444 F. Supp. 879, 889 (E.D. Va. 1977) ("Whatever may be the purpose of Rule 59(e) it should not be supposed that it is intended to give an unhappy litigant one additional chance to sway the judge.").

As to the preliminary injunction, Strebe argued that the defendants denied him access to the courts when they replaced computer programs with programs that had lesser functionality. I ruled directly on this matter in the memorandum opinion and Strebe has not presented an intervening change in controlling law, new evidence, a clear error of law, or manifest injustice. *See* Mem. Op. 15 n.4 ("Strebe is not constitutionally entitled to any specific word processor, computer program, or typing apparatus."). Therefore, I will deny the motion for reconsideration as to the preliminary injunction.

As for reconsideration of the dismissal of his case, Strebe asserts the following:

(1) Under the second *Turner* factor,[1] I failed to address:

    a.  the strain that the revised policy places on Strebe's family;

    b.  that not all inmates possess a JPay device or are able to access online services;

    c.  the quality of the copied photos; and

    d.  the prison's destruction of returned prisoners' mail.

(2) Under the third *Turner* factor, I failed to recognize that the new policies have not reduced the flow of contraband into the prison; and

(3) I failed to address that the prison was retaining and reading scanned copies of incoming mail which chilled Strebe's family's freedom of expression for fear of retaliation.

Strebe's motion mostly presents issues that the court already ruled upon, either expressly or by reasonable implication, when I dismissed his action. Furthermore, he fails to show an intervening change in controlling law, new evidence not available at trial, a clear error of law, or manifest injustice. Nevertheless, the court will briefly discuss his arguments.

Errors 1(a), 1(c), and 3 are closely related and so I will address them together. In these assignments of error, Strebe asserts that I failed to fully address his arguments under the second factor in *Turner*, specifically the significant negative impact of the policy on his family. However, in the memorandum opinion, I specifically discussed the alternatives available for Strebe and his relatives. Although I sympathize that paying extra and using particular methods

---

[1] *Turner v. Safley*, established the four-pronged test that applies to regulations censoring incoming mail. 482 U.S. 78 (1987) (establishing test and specifically rejecting strict scrutiny standard); *see Montcalm Publ'g Corp. v. Beck*, 80 F.3d 105, 108 (4th Cir. 1996). Under *Turner*, courts must consider: (1) whether there is a "valid, rational connection" between the prison regulation or action and the interest asserted by the government, or whether this interest is "so remote as to render the policy arbitrary or irrational"; (2) whether "alternative means of exercising the right . . . remain open to prison inmates"; (3) what impact the desired accommodation would have on security staff, inmates, and the allocation of prison resources; and (4) whether there exist any "obvious, easy alternatives" to the challenged regulation or action. *Lovelace v. Lee*, 472 F.3d 174, 200 (4th Cir. 2006) (quoting *Turner*, 482 U.S. at 89-92).

of correspondence may place some strain on both Strebe and his family, prisoners are not entitled to unlimited access to the mails and I previously ruled on the constitutionality of the policy at issue in the memorandum opinion. *See* Mem. Op. 11-14; *Oliver v. Powell*, 250 F. Supp. 2d 593, 607-08 (E.D. Va. 2002) (quoting *Turner*, 482 U.S. at 92) ("[I]f prisoners were permitted to have unfettered access to their general correspondence, it would 'threaten the core functions of prison administration, maintaining safety and internal security.'").

As to Error 1(b), Strebe has a JPay device—his argument that other prisoners may not have them is unavailing. For Error 1(d), I did not address the claim because he did not appear to raise it. Although *pro se* litigants are entitled to liberal construction of their claims, a court may not create facts and claims for them. He may raise such a claim in a new and separate filing.

In Error 2, Strebe asserts that I did not address the prison policy's ultimate failure. His argument is unconvincing. Strebe simultaneously argues that more contraband is flowing into the prison than before while admitting that the correspondence policy "eliminates all avenues for smuggling drugs into the system through the mail." Mot. for Recons. 5, Dkt. No. 40. The prison's desired impact was to deter and lessen contraband smuggling through the mails. Therefore, the third *Turner* factor still weighs in favor of the defendants, because reversal of the policy would allow for a greater risk of the entry of drugs. *See* Mem. Op. 12-13.

**III.**

Accordingly, the court **DENIES** the motions for reconsideration, ECF Nos. 33, 40.

The Clerk is directed to send a copy of this order to the parties.

**ENTER:** This  21st  day of November, 2018.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE